UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA DIVISION

CHRISTOPHER WALTON )
)
)
(Enter above the NAME of the plaintiff in this action.) )

v. )

(SEE ATTACHMENT PAGES: 1-2) )
)
)
(Enter above the NAME of each defendant in this action.) )

FILED
AUG 21 2025
Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

1:26-CV-236

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(42 U.S.C. Section 1983)

I. PREVIOUS LAWSUITS

A. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment? YES ( ) NO ( X )

B. If your answer to A is YES, describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1. Parties to the previous lawsuit:

Plaintiffs: ______________________________

______________________________

Defendants: ______________________________

______________________________

2. COURT: (If federal court, name the district; if state court, name the county):

_______________________________________________

3. DOCKET NUMBER: _______________________________

4. Name of Judge to whom case was assigned: ____________________

5. Disposition: (For example: Was the case dismissed? Was it appealed? Is it still pending?) _______________________________

6. Approximate date of filing lawsuit: ____________________

7. Approximate date of disposition: ____________________

II. PLACE OF PRESENT CONFINEMENT: HAMILTON COUNTY JAIL/DETENTION CENTER

A. Is there a prisoner grievance procedure in this institution? YES ( X) NO ( )

B. Did you present the facts relating to your complaint in the prisoner grievance procedure? YES ( X) NO ( )

C. If your answer is YES,

1. What steps did you take? SEE ATTACHMENT PAGES: 6-7

_______________________________________________

2. What was the result? _______________________________

_______________________________________________

D. If your answer to B is NO, explain why not. ____________________

_______________________________________________

E. If there is no prison grievance procedure in the institution, did you complain to the prison authorities? YES ( ) NO ( )

F. If your answer is YES,

1. What steps did you take? _______________________________

_______________________________________________

2. What was the result? ______________________________

______________________________

III. PARTIES

(In item A below, please your name in the first blank and place your present address in the second blank. Do the same for any additional plaintiffs.)

A. Name of plaintiff: CHRISTOPHER WALTON, SPIN# 173345

Present address: 601 JUSTICE WAY, CHATTANOOGA, TN 37421

Permanent home address: N/A

Address of nearest relative: 3816 DORRIS STREET, CHATTANOOGA, TN 37410

(In item B below, place the FULL NAME of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use item C for the additional names, positions, and places of employment of any additional defendants.)

B. Defendant: AUSTIN GARRETT

Official position: SHERIFF OF HAMILTON COUNTY, TENNESSEE

Place of employment: HAMILTON COUNTY SHERIFF'S OFFICE

C. Additional defendants: SEE ATTACHMENT: PAGES: 1-2

______________________________

______________________________

______________________________

IV. STATEMENT OF CLAIM

(State here as briefly as possible the FACTS of your case. Describe how EACH defendant is involved. Include also the names of other persons involved, dates and places. DO NOT give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheets, if necessary.)

SEE ATTACHMENT PAGES: 2-7

______________________________

V. RELIEF

(State BRIEFLY exactly what you want this Court to do for you. Make NO legal arguments.

Cite NO cases or statutes.)

SEE ATTACHMENT PAGES: 8-9

I (We) hereby certify under penalty of perjury that the above complaint is true to the best of my (our) information, knowledge and belief.

Signed this 19th day of AUGUST, 20 26.

Christopher Walton
Signature of plaintiff(s)

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TENNESSEE

## AT CHATTANOOGA DIVISION

**CHRISTOPHER WALTON,**
Plaintiff,

v.

**AUSTIN GARRETT, Sheriff of Hamilton County, Tennessee,** in his individual and official capacities;

**RODNEY TERRELL, Captain, Hamilton County Sheriff's Office,** in his individual and official capacities;

**ERIC QUALLS, Lieutenant, Hamilton County Sheriff's Office,** in his individual and official capacities;

**BRANDON BOOTH, Sergeant, Hamilton County Sheriff's Office,** in his individual and official capacities;

**KILEY THOMAS, Deputy, Hamilton County Sheriff's Office,** in his individual and official capacities;

**ISAIAH WORD, Deputy, Hamilton County Sheriff's Office,** in his individual and official capacities;

**JUSTIN GAZZAWAY, Deputy, Hamilton County Sheriff's Office,** in his individual and official capacities;

**(FNU) SIBILSKY, Deputy, Hamilton County Sheriff's Office,** in his individual and official capacities;

**(FNU) STOCKWELL, Deputy, Hamilton County Sheriff's Office,** in his individual and official capacities;

**JOHN DOES 1–10, Deputies, Hamilton County Sheriff's Office,** in their individual and official capacities,
Defendants.

Civil Action No. __________

**JURY TRIAL DEMANDED**

**STATEMENT OF CLAIM**

1. Plaintiff **Christopher Walton** brings this action pursuant to **42 U.S.C. § 1983** for alleged violations of his constitutional rights while confined as a pretrial detainee at the Hamilton County detention facility in Chattanooga, Tennessee.
2. Allegations concerning events personally experienced or observed by Plaintiff are based upon Plaintiff's personal knowledge. Allegations concerning identities, responsibilities, policies, customs, training, supervision, internal records, or actions occurring outside Plaintiff's presence are alleged upon information and belief where indicated and remain subject to confirmation through discovery.

**A. Events of September 5, 2025**

3. On or about **September 5, 2025**, Plaintiff was confined at the Hamilton County detention facility as a pretrial detainee.
4. Earlier that day, Plaintiff was involved in a physical altercation with another inmate.
5. Following the altercation, Plaintiff returned to his assigned cell.
6. Plaintiff complied with the institutional lockdown and remained inside his cell awaiting further instructions from correctional personnel.
7. Several hours later, members of the Hamilton County Jail Security Team approached Plaintiff's cell.
8. Based upon Plaintiff's present knowledge and recollection, the officers and supervisory personnel associated with the incident included **Deputy Kiley Thomas, Deputy Isaiah Word, Deputy Stockwell, Deputy Justin Gazzaway, Deputy Sibilsky, Sergeant Brandon Booth, Lieutenant Eric Qualls, Captain Rodney Terrell, Sheriff Austin Garrett, and other officers whose identities are presently unknown to Plaintiff**.
9. When officers approached Plaintiff's cell, Plaintiff complied with their instructions.
10. Plaintiff stood and walked toward the cell door with his hands raised and visible to the officers.
11. Plaintiff alleges that he was not physically attacking an officer, attempting to escape, actively resisting, or otherwise presenting an immediate physical threat.
12. Despite Plaintiff's compliance, the food port or tray slot in the cell door was opened.

13. Plaintiff alleges that an officer discharged a chemical agent into the cell and onto Plaintiff.
14. Plaintiff alleges that the chemical agent was deployed despite his compliance with the officers' commands and while his hands remained raised and visible.
15. After being sprayed, Plaintiff went to the floor and positioned himself face down.
16. Plaintiff kept his hands visible and awaited the officers' entry into the cell.
17. Plaintiff alleges that he was not actively resisting when the officers entered.

**B. Force Used Inside the Cell**

18. Officers subsequently entered Plaintiff's cell.
19. Plaintiff alleges that officers placed or forced a riot shield against his back while he was lying face down on the floor.
20. Plaintiff alleges that substantial pressure was applied through the shield, pinning his body against the floor.
21. Plaintiff experienced difficulty breathing while being held in that position.
22. Plaintiff alleges that while he remained on the floor and under the officers' control, his head and face were repeatedly forced or slammed against the concrete floor.
23. Plaintiff alleges that this force caused substantial trauma to the left side of his face and head.
24. The plaintiff's face and left eye began to swell significantly.
25. Plaintiff alleges that his left eye became swollen shut.
26. Plaintiff further alleges that he remained substantially restrained and under the control of multiple officers when additional force was used against him.
27. Plaintiff alleges that **Deputy Justin Gazzaway** repeatedly struck him in the back of the head with what Plaintiff understood to be a pepper-ball launcher or similar device.
28. Plaintiff alleges that Deputy Gazzaway continued striking him with the device until the device broke or came apart.
29. The blows caused a significant wound or laceration to Plaintiff's head.
30. Plaintiff alleges that during the incident he pleaded with the officers to stop and feared that he was going to die.
31. Plaintiff alleges that despite his pleas and restrained condition, the use of force continued until the officers elected to stop.
32. Plaintiff was thereafter placed in handcuffs and leg restraints.
33. The plaintiff was removed from the cell and escorted from the housing area.

**C. Injuries and Immediate Medical Treatment**

34. Following the incident, Plaintiff was taken to an area he describes as the jail sally port.
35. Plaintiff recalls that supervisory correctional personnel and medical personnel were present in or around that area.

36. Plaintiff alleges that **Captain Rodney Terrell** and **Sheriff Austin Garrett** were among the personnel present following the incident.
37. Plaintiff had visible injuries to his head and face.
38. Plaintiff alleges that the wound to the back of his head was sufficiently severe to require staples.
39. Medical personnel placed staples in Plaintiff's scalp or head wound.
40. Plaintiff was thereafter transported or escorted to the jail's medical clinic for further evaluation or observation.
41. Plaintiff alleges that his injuries included substantial swelling to the left side of his face, trauma to his head, a laceration requiring staples, pain, and injury to his left eye.

**D. Encounter With TBI Agents**

42. Following the incident and initial medical treatment, Plaintiff was taken to an attorney visitation or interview room.
43. **Tennessee Bureau of Investigation Agents Luke Muhonen and James Webb** were present for purposes of interviewing Plaintiff concerning the earlier inmate altercation.
44. Plaintiff alleges that Agent Muhonen observed Plaintiff's physical condition following the use-of-force incident.
45. According to Plaintiff's recollection, Agent Muhonen reacted with apparent surprise upon observing Plaintiff's condition and asked whether Plaintiff was alright.
46. The plaintiff declined to participate in the interview.
47. The plaintiff was thereafter returned to segregation or restrictive housing.

**E. Loss of Vision and Subsequent Medical Complaints**

48. After being returned to segregation, Plaintiff attempted to wash the chemical agent from his face and eyes.
49. Plaintiff then discovered that he could not see out of his left eye.
50. Plaintiff alleges that he reported the loss of vision to correctional personnel.
51. According to Plaintiff, he was initially advised or led to believe that the vision problem resulted from the chemical agent and would resolve.
52. Plaintiff alleges that his vision did not return.
53. Plaintiff continued reporting problems with his left eye and sought additional medical attention.
54. Plaintiff alleges that he submitted requests for medical evaluation concerning his continuing loss of vision.
55. Plaintiff subsequently underwent additional medical evaluation, including diagnostic examination and/or X-rays.
56. Plaintiff was eventually referred to or examined by an outside eye specialist or ophthalmologist.

57. Plaintiff alleges that following examination he was informed that the injury to his left eye was permanent and could not be repaired.
58. Plaintiff alleges that he has permanently lost vision in his left eye as a result of the injuries sustained during the September 5, 2025 incident.
59. Plaintiff further alleges continuing physical pain, impairment, emotional distress, and other consequences associated with his head and eye injuries.

**F. Conduct of Officers Present**

60. Plaintiff alleges that multiple correctional officers were present during some or all of the use of force.
61. Plaintiff alleges that officers who personally participated in the force knew that Plaintiff had been sprayed with a chemical agent, was on the floor, and was substantially under their physical control.
62. Plaintiff alleges that officers who observed the incident could see or otherwise perceive Plaintiff's condition and the force being applied against him.
63. Plaintiff alleges that officers who had a reasonable opportunity to prevent or stop the continued use of force failed to do so.
64. Plaintiff presently lacks access to all surveillance recordings, incident reports, use-of-force reports, employee records, duty assignments, internal communications, and other records necessary to determine the precise actions of every officer present.
65. Plaintiff therefore reserves the identification of the precise acts or omissions attributable to each officer for amendment following appropriate discovery, where permitted by the Federal Rules of Civil Procedure.

**G. Supervisory and Municipal Matters**

66. Plaintiff alleges, upon information and belief, that supervisory personnel were responsible for supervising correctional personnel involved in the incident and ensuring compliance with constitutional standards governing the treatment of pretrial detainees.
67. Plaintiff alleges that certain supervisory personnel were present during or immediately following the incident and became aware of Plaintiff's physical condition.
68. Plaintiff presently lacks access to internal Hamilton County records necessary to determine what supervisory personnel knew before the incident concerning the involved officers, what reports were generated afterward, whether the incident was investigated, and whether corrective or disciplinary measures were imposed.
69. Plaintiff likewise presently lacks access to information concerning prior similar incidents, use-of-force complaints, internal investigations, training records, disciplinary histories, or other evidence that may establish the existence of a relevant Hamilton County policy, custom, practice, or failure to train or supervise.

70. To the extent Plaintiff asserts municipal or official-capacity liability, allegations concerning an unconstitutional policy, custom, practice, failure to train, failure to supervise, failure to investigate, or failure to discipline are made upon information and belief and remain subject to evidentiary development through discovery.
71. Plaintiff does not presently allege as an established fact that every supervisory Defendant personally participated in every application of physical force.

**H. Administrative Grievance and Appeal History**

72. Plaintiff invoked the detention facility's administrative grievance procedure concerning the matters underlying this action.
73. On **June 15, 2026, at approximately 2:00 p.m.**, Plaintiff submitted a formal grievance through the facility's electronic kiosk system concerning the alleged use of force, resulting injuries, medical treatment, and related matters described in this Statement of Claim.
74. Plaintiff's submission was assigned **Grievance No. 951855**, and the electronic kiosk system generated confirmation documenting submission of the grievance.
75. Plaintiff retained, or otherwise has access to, the kiosk confirmation associated with Grievance No. 951855 and intends to rely upon that documentation as evidence of his use of the facility's administrative grievance procedure.
76. Plaintiff did not initially receive a response or disposition concerning Grievance No. 951855.
77. After nearly one month had passed without a response, Plaintiff submitted a follow-up communication through the electronic kiosk system requesting that detention facility staff address and respond to his previously submitted grievance.
78. Plaintiff's follow-up communication was assigned **No. 955057**.
79. In Follow-up No. 955057, Plaintiff specifically requested a response concerning unresolved Grievance No. 951855.
80. Subsequent to Plaintiff's follow-up request, detention facility staff issued a response through the electronic kiosk system concerning **Grievance No. 951855**.
81. The staff response was unfavorable to Plaintiff and did not grant the relief requested in his grievance.
82. Plaintiff thereafter sought further administrative review of the unfavorable grievance determination.
83. On **July 21, 2026**, Plaintiff submitted an appeal of the grievance determination through the detention facility's newly implemented grievance system.
84. Plaintiff's grievance appeal was assigned **Appeal/Grievance No. 711775131**.
85. Through Appeal/Grievance No. 711775131, Plaintiff sought administrative review of the unfavorable disposition of his underlying grievance and continued to pursue relief through the administrative process made available to him by the detention facility.

86. **As of the filing of this pleading, detention facility officials have not responded to Appeal/Grievance No. 711775131. Plaintiff has received no decision, disposition, or other substantive response concerning the appeal.**
87. Plaintiff has utilized the administrative grievance procedures made available to him by: (a) submitting Grievance No. 951855; (b) submitting Follow-up No. 955057 after the original grievance initially went unanswered; and (c) submitting Appeal/Grievance No. 711775131 on July 21, 2026, following the unfavorable disposition of his original grievance.
88. Plaintiff intends to preserve and, where appropriate, submit as documentary evidence the kiosk confirmation for **Grievance No. 951855**, documentation associated with **Follow-up No. 955057**, the staff response to Grievance No. 951855, documentation confirming submission of **Appeal/Grievance No. 711775131**, and any subsequent administrative response or disposition.
89. Plaintiff's allegations concerning administrative exhaustion are based upon the administrative steps he actually pursued and the responses he actually received. As of the filing of this pleading, Plaintiff has received no response, decision, or disposition concerning Appeal/Grievance No. 711775131.
90. Plaintiff affirmatively pursued each administrative remedy made available to him, including seeking further administrative review through Appeal/Grievance No. 711775131 on July 21, 2026.
91. **To the extent the period prescribed by the applicable grievance procedure for responding to Plaintiff's appeal has expired and no further administrative step is available to Plaintiff without such a response, Plaintiff alleges that he has exhausted all administrative remedies available to him within the meaning of 42 U.S.C. § 1997e(a).** See *Ross v. Blake*, 578 U.S. 632, 642–44 (2016); *Boyd v. Corrections Corp. of America*, 380 F.3d 989, 996 (6th Cir. 2004); *Risher v. Lappin*, 639 F.3d 236, 240–41 (6th Cir. 2011).

**I. Resulting Harm**

92. Plaintiff alleges that the foregoing events caused serious and permanent physical injuries.
93. Most significantly, Plaintiff alleges permanent loss of vision in his left eye.
94. Plaintiff also alleges a significant head wound requiring staples, facial and head trauma, physical pain, and continuing impairment.
95. Plaintiff alleges that he has suffered and continues to suffer emotional distress and loss of normal functioning associated with these injuries.
96. Plaintiff alleges that his physical injuries and permanent impairment were directly and approximately caused by unconstitutional conduct attributable to the responsible Defendant or Defendants.
97. Plaintiff seeks relief only against those persons or governmental entities for whom the evidence establishes a legally sufficient basis for liability under **42 U.S.C. § 1983**.

**J. Relief Sought**

98. As a direct and proximate result of the constitutional violations alleged and ultimately proven in this action, Plaintiff seeks all relief authorized by federal law.
99. Plaintiff seeks **compensatory damages in an amount to be determined by the jury** for injuries and losses proven to have resulted from unconstitutional conduct, including, as applicable:

a. permanent loss of vision in Plaintiff's left eye;

b. permanent physical impairment and disability;

c. physical injuries to Plaintiff's head, face, and eye;

d. past and future physical pain and suffering;

e. emotional distress and mental anguish;

f. loss of enjoyment of life and normal functioning;

g. past and future medical expenses for which Plaintiff is legally responsible;

h. reasonably necessary future medical treatment resulting from his injuries; and

i. any other compensable economic or noneconomic damages established by competent evidence.

100. Plaintiff seeks **punitive damages against appropriate individual Defendants**, but not against a municipal entity, to the extent the evidence establishes conduct satisfying the governing federal standard for punitive damages under 42 U.S.C. § 1983.
101. Plaintiff seeks punitive damages in an amount determined by the jury sufficient to punish any individual Defendant whose conduct satisfies that standard and to deter comparable unconstitutional conduct.
102. Plaintiff seeks **nominal damages** for any constitutional violation established for which compensatory damages are not otherwise proven.
103. To the extent legally available and supported by Plaintiff's circumstances when relief is adjudicated, Plaintiff seeks appropriate **declaratory relief** concerning any constitutional violation established in this action.
104. Plaintiff seeks prospective **injunctive relief only to the extent that he establishes Article III standing, an ongoing constitutional injury or sufficiently imminent threat of future injury, and entitlement to such relief under applicable law**.
105. Plaintiff seeks his taxable costs and, if represented by counsel and otherwise recoverable, **reasonable attorney's fees pursuant to 42 U.S.C. § 1988**.

106. Plaintiff seeks **prejudgment and post-judgment interest** to the extent permitted by law.

107. Plaintiff does not presently specify a fixed monetary amount for compensatory or punitive damages and instead requests that damages be determined by the jury based upon the evidence presented.

**K. Prayer for Relief**

**WHEREFORE**, Plaintiff Christopher Walton respectfully requests that this Court enter judgment in his favor and against the Defendant or Defendants found liable and:

A. Declare, to the extent legally appropriate, that the conduct proven in this action violated Plaintiff's constitutional rights;

B. Award Plaintiff **compensatory damages in an amount to be determined by the jury** for his physical injuries, permanent impairment, pain and suffering, emotional distress, medical expenses, and other damages established by the evidence;

C. Award **punitive damages against any individual Defendant** whose conduct satisfies the governing legal standard, in an amount to be determined by the jury;

D. Award **nominal damages** for any constitutional violation established for which compensatory damages are not otherwise proven;

E. Grant appropriate prospective **injunctive relief**, to the extent Plaintiff establishes standing and entitlement to such relief;

F. Award Plaintiff his allowable costs and, where applicable, reasonable attorney's fees pursuant to **42 U.S.C. § 1988**;

G. Award prejudgment and post-judgment interest as permitted by law;

**H.** Upon granting Plaintiff leave to proceed in forma pauperis and following the Court's preliminary review of this action, direct the United States Marshals Service to effect service of process upon the appropriate Defendants pursuant to **28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3);** and

I. Grant such other and further relief as this Court deems just and proper.

**L. Jury Demand**

108. Plaintiff demands a **trial by jury on all issues so triable**.

Respectfully submitted,

**Christopher Walton, Pro Se,** Plaintiff
**601 Justice Way, Chattanooga, TN 37421**
**SPIN #: 173345**

CHRISTOPHER WALTON #173345
601 JUSTICE WAY
CHATTANOOGA, TN 37421

STICKER AT TOP OF ENVELOPE TO THE RIGHT
E RETURN ADDRESS, FOLD AT DOTTED LINE

ERTIFIED MAIL®

7021 1970 0001 6749 8220

Retail

UNITED STATES POSTAL SERVICE®

37402

RDC 99

U.S. POSTAGE PAID
FCM LG ENV
CHATTANOOGA, TN 37409
AUG 19, 2026

$8.11

S2325S500294-55

X-RAYED

CLERK, UNITED STATES DISTRICT COURT
900 GEORGIA AVENUE, Room 309
CHATTANOOGA, TN 37402